IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KELVIN CARVER JOHNSON,

    Plaintiff,　　　　　　　　　　No. CIV S-07-1451 FCD DAD P

  vs.

D.K. SISTO, et al.,

    Defendants.　　　　　　　　　FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. Before the court is defendants' February 7, 2008, motion to dismiss the case on the ground that plaintiff failed to properly exhaust available administrative remedies prior to bringing this action. Plaintiff has filed a timely opposition and defendants have filed a timely reply. Plaintiff has also filed an unauthorized objection to defendants' reply. See E.D. Cal. Local Rule 78-230(m).

**BACKGROUND**

        In his complaint plaintiff alleges as follows. On July 6, 2006, after having been placed on lock-down status due to ongoing violence between African American and Southern Mexican inmates, plaintiff received clearance to go back to his work assignment on Yard 1. (Compl. at 5.) On his way to work, he noticed at least twenty Southern Mexican inmates

1

1  gathered together on the south side of the yard.  (Id. at 6.)  He also noticed about twenty African
2  American inmates walking around the yard.  (Id. at 7.)  When the yard opened for the general
3  population, the inmates assembled together by racial background on different sides of the
4  basketball court.  (Id.)  Plaintiff noticed more Southern Mexican inmates gathering together and
5  looking in their direction.  (Id.)  A few minutes later, inmate Ramirez and one of his friends
6  approached plaintiff.  (Id.)  The three discussed their mutual concerns regarding both racial
7  groups being in such close proximity after just having come off of lock-down status.  (Id.)

8        Plaintiff and inmate Ramirez attempted to convince defendants Chirila and
9  Cummings that inmates of the two races were too close in proximity to one another and that the
10 Men's Advisory Committee ("MAC") should be called upon to speak with everyone to ensure
11 that there was peace between the groups. (Compl. at 8.)  Defendants replied that they had to wait
12 until after yard recall to deal with the matter and maintained that the MAC Chairman was not
13 cleared to come to the yard to address such situations.  (Id. at 9.)  Although plaintiff told
14 defendants Chirila and Cummings that the matter was far too serious to wait until after yard
15 recall, the defendants said that there was nothing they could do.  (Id.)

16       Plaintiff alleges that he and inmate Ramirez looked back at the basketball court
17 and noticed forty to forty-five Southern Mexican inmates and nineteen to twenty-one African
18 American inmates looking at one another. (Compl. at 10.)  Inmate Ramirez suggested it would
19 be best if plaintiff could convince the African American inmates to leave the basketball court
20 until both races reached an understanding.  (Id.)  He said he would tell his group to do the same.
21 (Id.)

22       According to plaintiff, none of the African American inmates were contemplating
23 an attack on the Southern Mexican inmates.  (Compl. at 10.)  Plaintiff claims that he and inmate
24 Munns approached the Southern Mexican inmates and reached an agreement to trust each other.
25 (Id. at 11.)  They shook hands, and plaintiff and inmate Munns began walking back towards their
26 side of the basketball court when one of the African American inmates yelled "here they come."


1  (Id. at 11-12.)  Within seconds they were surrounded by Southern Mexican inmates and fighting
2  for their lives.  (Id.)  Plaintiff alleges that defendants Chirila and Cummings merely watched as
3  the situation erupted into violence and bloodshed since nearly all of the Southern Mexican
4  inmates had some type of weapon.  (Id.)  Plaintiff claims that he and several other African
5  American inmates received serious injuries as a result of the riot.  (Id.)   Based on these
6  allegations, plaintiff contends that the defendants violated his Eighth Amendment rights by
7  failing to provide him adequate protection despite full knowledge of the impending danger.

**DEFENDANTS' MOTION TO DISMISS**

I. Defendants' Motion

Defendants argue that plaintiff's action should be dismissed because he brought this suit prior to exhausting his administrative remedies.  (Defs.' Mot. to Dismiss at 2; Cervantes Decl. at 2.)  Defendants contend that, on August 17, 2006, plaintiff attempted to file an administrative appeal regarding the incident of July 6, 2006, but prison officials rejected it as untimely.  (Defs.' Mot. to Dismiss at 2; Flores Decl. at 2.)  Plaintiff subsequently attempted to file administrative appeals on September 11, September 13, September 20, and October 20, but prison officials similarly rejected them.  (Defs.' Mot. to Dismiss at 2; Flores Decl. at 2.)

Defendants argue that the Prison Litigation Reform Act mandates that plaintiff exhaust administrative remedies prior to filing a civil rights complaint in federal court.  (Defs.' Mot. to Dismiss at 3.)  In addition, defendants argue that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ."  (Id. at 4.)  Defendants contend that prison officials properly rejected plaintiff's August 17, 2006 administrative appeal as untimely.  (Id. at 5.)  Defendants also contend that prison officials properly rejected plaintiff's four subsequent appeals because they were duplicative of his previous untimely filing.  (Id.)  Defendants note that, at each stage of the process, plaintiff could have provided the prison's appeals coordinator with an explanation as to why his appeal was untimely filed but failed to do so.  In this regard, defendants contend that plaintiff's lengthy and

argumentative submissions failed to provide a credible basis for granting him relief from the initial decision finding his grievance to be untimely. (Id.) Finally, defendants assert that in any event plaintiff never did file an appeal to the director's level seeking relief and thus failed to pursue his administrative grievance through to the highest level of review prior to filing suit.

Defendants contend that plaintiff failed to complete the administrative grievance process in compliance with the applicable procedural rules. Accordingly, defendants conclude that plaintiff's complaint should be dismissed. (Defs.' Mot. to Dismiss at 5-6.)

II. Plaintiff's Opposition

In opposition, plaintiff argues that the appeals coordinator at CSP-Solano prevented him from exhausting his claims. (Pl.'s Opp'n to Def's. Mot. to Dismiss at 2, 8-9.) Plaintiff appears to acknowledge that he filed his initial administrative appeal late under the applicable regulations but explains that the delay in filing was justified and resulted from him waiting to receive copies of his medical records that he needed to present his grievance. (Id. at 7-8.) In the alternative, plaintiff appears to contend that his grievance should not have been rejected as untimely because under the applicable regulations there is a one-year time limit for filing administrative appeals relating to claims of employee misconduct and his was such a claim. (Id. at 7 & 10.) Plaintiff argues that the appeals coordinator's unprofessional conduct prevented him from pursuing his appeal through to the director's level of review. (Id.) Plaintiff concludes that he did all he could do to exhaust his administrative remedies but was frustrated in those attempts by the improper actions of the appeals coordinator at CSP-Solano who improperly rejected his grievances and appeals as untimely. (Id. at 15.)

III. Defendants' Reply

In reply, defendants reiterate that plaintiff failed to fully exhaust his administrative grievances prior to filing this lawsuit. (Defs.' Reply at 2.) They also contend that plaintiff has attempted to mislead the court as to the true facts related to his failed efforts to exhaust his

/////

1 administrative remedies and they urge the court to grant their motion and dismiss plaintiff's
2 complaint without prejudice.

3 IV. <u>Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

4 By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. <u>Id.</u> at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. <u>See</u> Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit. <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005); <u>Bennett v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. Jones v. Bock, 549 U.S.199, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003). The defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[1] Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied __ U.S. __, 127 S. Ct. 1212 (2007). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 127 S. Ct. at 924.

V. Discussion

The Prison Litigation Reform Act requires a prisoner to properly exhaust his administrative remedies as long as prison officials can take some action in response to the complaint. See Woodford, 548 U.S. 84-85; Booth, 532 U.S. at 733-34; see also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'").

In Woodford, California prison officials had placed a state prisoner in administrative segregation for allegedly engaging in "inappropriate activity" in the prison chapel.

---

[1] Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b) on November 5, 2007. (Order filed Nov. 5, 2007 at 3-4).

Woodford, 548 U.S. 86.  The prisoner filed a grievance, but prison officials had rejected it as untimely because the prisoner failed to file it within fifteen working days of the action being challenged.  The prisoner appealed the decision internally without success and subsequently brought an action pursuant to 42 U.S.C. § 1983.  Id. at 86-87.  The Supreme Court held that the PLRA requires proper exhaustion and explained that a prisoner does not satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective appeal.  Id. at 83-84.  In this regard, the Supreme Court reasoned that administrative exhaustion serves two primary purposes.  Id. at 89.  First, exhaustion protects administrative agency authority by allowing an agency the opportunity to correct its own mistakes.  Id.  Second, exhaustion promotes efficiency and may produce a useful record for a subsequent court case.  Id.  The Court noted that requiring proper exhaustion "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors."  Id. at 90.  The Court concluded that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91.

California regulations apparently require an inmate to appeal a decision made or action taken by prison authorities "within 15 working days of the event or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.6(c).  The Ninth Circuit has recently addressed this requirement and its potential impact on the PLRA exhaustion requirement for California prisoners in considering the Woodford case on remand from the Supreme Court.  See Ngo v. Woodford,___F.3d___, 2008 WL 3863859 (9th Cir. Aug. 21, 2008).  In that case the prisoner plaintiff sought informal review from the warden of restrictions placed upon his ability to participate in programs by the prison classification committee as a result of his violation.  Ngo v. Woodford, 2008 WL 3863859, *1-2.  However, he sought that informal review three months after the restrictions were first imposed with the warden partially rescinding the restrictions.  Id.

Approximately three months later, and almost six months after the classification committee imposed the restrictions, the prisoner plaintiff submitted his first formal appeal challenging the restrictions to the prison's appeals coordinator. Id. That appeal as well as a subsequent appeal were rejected as untimely under Cal. Code Regs. tit. 15, § 3084.6(c). Id. Against this factual background the Ninth Circuit concluded that the prisoner plaintiff had failed to properly exhaust his administrative remedies as required because he "sat on" his grievance regarding the classification committee's action "for months." Id. at *2.[2]

In the present case, plaintiff concedes that his administrative grievance was filed more than fifteen working days after the July 6, 2006 incident[3] and that he never pursued it through the director's level of review. (Pl.'s Opp'n to Def's. Mot. to Dismiss at 7 & 10.) However, the undersigned shares the concerns expressed by Circuit Judge Pregerson in his concurring opinion in Ngo v. Woodford, 2008 WL 3863859 at *3-4. In particular, his observations regarding the significant incentive on the part of prison officials to find claims procedurally barred is born out by the undersigned's experience in considering an onslaught of motions to dismiss prisoner civil rights complaints for failure to exhaust administrative remedies. There would appear to be little doubt that appeals coordinators in California prisons of late are "screening out" prisoner grievances on procedural grounds in record number. In this case for instance, rather than proceeding to the director's level of review, plaintiff stubbornly continued to

---

[2] The Ninth Circuit found it unnecessary to address whether California's fifteen working day limitations period for prisoner's administrative appeals amounts to a meaningful opportunity to exhaust because Ngo had waited months after the fifteen working days elapsed before beginning to questions the restrictions imposed on him. Ngo v. Woodford,___F.3d___, 2008 WL 3863859, *2 (9th Cir. Aug. 21, 2008). In his concurring opinion Circuit Judge Pregerson agreed with this conclusion but noted his "serious concerns about the constitutionality of California's prisoner grievance process" due to both the extremely short limitations period for filing a grievance and the lack of clarity in the applicable regulations about how appeals should be filed. Id. at *3-4. In doing so, he noted that "[p]rison officials . . . have significant incentive to find that claims are procedurally barred, given the large number of prisoner grievances." Id. at *3.

[3] The fifteenth working day following July 6, 2006, would have been July 27, 2006. Plaintiff's first grievance was filed fifteen working days thereafter, on August 17, 2006.

insist in appeals filed at the informal level of review and that his delay in filing his appeal was justified by his need to wait for medical records with respect to his claim. (Compl., Exs. A-E.) While plaintiff's explanation for filing his grievance fifteen working days after the expiration of the fifteen working day limitations period may not have been compelling in light of the simple grievance procedure employed in California's prisons, certainly the appeals coordinator had the discretion to accept it and to consider plaintiff's grievance on the merits. He chose not to do so but instead rejected the appeals on the procedural ground that they were untimely and duplicative.

Because of the concerns noted above and in Circuit Judge Pregerson's concurring opinion in Ngo v. Woodford, 2008 WL 3863859 at *3-4, the undersigned will not rely on plaintiff's alleged failure to timely file his grievance. Rather, the court finds only that it is undisputed that plaintiff failed to pursue his grievance to the highest level of review available, the director's level, before filing suit. See Butler, 397 F.3d at 1183; Bennett, 293 F.3d at 1098. By filing a lawsuit without properly completing the administrative grievance process, plaintiff failed to exhaust his available administrative remedies, a prerequisite to filing this action. Woodford, 548 U.S. at 90-91. See also Wyatt, 315 F.3d at 1120 (a prisoner's concession to nonexhaustion is a valid ground for dismissal of an action).

As noted above, the defendants have the burden to raise and prove the affirmative defense of failure to exhaust administrative remedies. See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1119 & n.13. Defendants Chirila, Cummings and Sisto have carried their burden in this regard. Plaintiff has not responded by demonstrating that such administrative procedures were unavailable or that prison officials effectively obstructed his ability to pursue his grievance through the director's level of review. See Ngo v. Woodford, 2008 WL 3863859 at *2. Given these circumstances, the court concludes that plaintiff failed to properly exhaust his administrative remedies with respect to his claims against the defendants and that defendants' motion to dismiss should therefore be granted.

**CONCLUSION**

IT IS HEREBY RECOMMENDED that:

1. Defendants' February 7, 2008 motion to dismiss (Doc. No. 14) be granted; and

2. This action be dismissed without prejudice for failure to exhaust administrative remedies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 26, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
john1451.57

10